IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Frenchis Gerard Abraham, ) | |
| ) | Civil Action No. 6:11-46-RMG-KFM |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Yvonne McDonald, RN, et al., ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the defendants' motion for summary judgment (doc. 98). The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Local Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

In his initial complaint (doc. 1) filed on January 14, 2011, the plaintiff claims that his constitutional rights have been violated while he was incarcerated at Lee Correctional Institution ("LCI"). The plaintiff filed an amended complaint (doc. 20) on February 22, 2011, setting forth new allegations. On February 28, 2011, the plaintiff filed a motion to amend (doc. 29) seeking to amend the complaint a second time and add additional defendants and allegations. On March 9, 2011, all named defendants filed an answer (doc. 39) to the amended complaint. On March 23, 2011, the defendants filed an answer to the second amended complaint (doc. 51). The plaintiff filed a third amended complaint (doc. 79) on April 5, 2011. The third amended complaint added defendants Benoir, Bowman, McCoy, Chambers, and Dingle.

On July 12, 2011, the defendants filed a motion for summary judgment. By order filed July 12, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response in opposition on October 27, 2011.

## **BACKGROUND**

The plaintiff is currently incarcerated at LCI within the South Carolina Department of Corrections ("SCDC"). His complaint and amended complaints allege that he has been denied adequate medical treatment while incarcerated at LCI and that the defendants have been deliberately indifferent to his serious medical needs in violation of his constitutional rights. The defendants are all employees of SCDC.

The plaintiff's original complaint alleges that the defendants McDonald and Rabon were deliberately indifferent to his serious medical needs because they knew of his splenic cyst condition, that surgery was recommended, and that the condition would worsen if left untreated, and they failed to prescribe adequate pain medication or initiate a surgical consultation for approximately one year. In his original complaint, the plaintiff also alleges that the defendants Ozmint and Padula were deliberately indifferent to his serious medical needs because they learned of his condition through the grievance process, knew surgery was recommended, and failed to direct the medical officials at LCI to take whatever action necessary to have surgery conducted. The plaintiff's amended complaint (doc. 20) restates the same allegations against the defendants McDonald, Rabon, Ozmint, and Padula. The amended complaint further alleges that defendant Pratt "failed to make any request or note to supervisors in relation to the plaintiff's treatment/surgery or for any medication to relieve the plaintiff's chronic serious pain nor for any assistance."

The plaintiff's most recent amended complaint (doc. 79) restates the allegations described above and asserts additional allegations against defendants Benior,

2

Lewis, Bowman, McCoy, Chambers, and Dingle. Further, the amended complaint alleges that defendant Benior disapproved a requested test for hepatitis C, which constituted deliberate indifference to a serious medical need. The plaintiff further alleges that defendant Lewis failed to ensure that he received prompt and proper treatment; that defendant Bowman personally denied him prompt and proper treatment by failing to timely schedule his appointments; that defendant McCoy personally denied him prompt and proper treatment by failing to timely schedule his appointments and ensure that appointments were met; that defendant Chambers cancelled his appointments and failed to ensure that the appointments were rescheduled and met; and that defendant Dingle failed to properly manage his medical records.

## **FACTS PRESENTED**

The plaintiff's medical records were submitted by the defendants as exhibits to the affidavit of LCI Nurse Practitioner Judy Rabon, a named defendant in this action (Rabon aff., ex. A, B). The following is a synopsis of the treatment afforded to the plaintiff with regard to his splenic cyst. On July 10, 2009 (ENC: 72[1]), the plaintiff reported to sick call complaining of trouble swallowing food, feeling food sits in his throat after swallowing, and heartburn. The plaintiff further complained of having to have a bowel movement within 30 minutes of eating and complained of trouble urinating. He further complained of blood in his urine. The plaintiff was evaluated and found to not be in acute distress. However, in light of the plaintiff's complaints, it was determined that the plaintiff should be seen by an SCDC physician.

On July 23, 2009 (ENC: 73), the plaintiff was seen in the medical department, complaining of feeling weak every day. The plaintiff further stated that he "feels like his food is coming up," that he sometimes has soft stools shortly after eating, and that he

---

[1] The encounter notes are located in exhibit A to Nurse Practitioner Rabon's affidavit.

3

continues to have blood in his urine and occasional abdominal pain. At that time, his assessment was: GERD (acid reflux disease) and the need to rule out a urinary tract infection. He was prescribed 20 milligrams of Prilosec per day for 30 days for treatment of his reflux symptoms. A urinalysis was also ordered with a urine sample to be taken at a later date.

On October 12, 2009 (ENC: 82), the plaintiff was seen by Dr. Pate with complaints of abdominal pain and diarrhea. SCDC medical records reflect that Dr. Pate was unable to palpate the plaintiff's liver at that time and noted abnormal liver enzymes and abdominal pain. In addition to the diagnostic tests previously conducted, Dr. Pate ordered an ultrasound of the plaintiff's liver and gallbladder (Rabon aff., ex. A).

On October 22, 2009 (ENC: 85), the plaintiff had an outside appointment with Imagecare for an ultrasound of his liver and gallbladder. Also on October 22, 2009 (ENC: 86), a CT scan of the plaintiff's abdomen was conducted per orders of Nurse Practitioner Sally Blake.

On November 9, 2009 (ENC: 88), Imagecare results from the CT scan of abdomen and pelvis with contrast were received at the LCI Medical Department from Imagecare, indicating a large splenic cyst measuring more than 9 centimeters at its greatest diameter and a small splenic cyst measuring approximately 1.5 centimeters in diameter. Said images further indicated no evidence of occult malignancy or inflammatory process. In light of these tests results, a surgical consult was initiated for the plaintiff.

On November 19, 2009 (ENC: 90; *see also* Rabon aff., ex. B), the plaintiff was seen in the surgery clinic and diagnosed with a large splenic cyst on CT-compressing stomach-bladder/kidneys. WNL-splenic cyst does not explain hematuria. At that time, the evaluating surgeon, Dr. Stanford, recommended that blood be drawn for numerous diagnostic tests, including urology evaluation and cystoscopy. Dr. Stanford further ordered a follow-up "ASAP" with him, for reevaluation and scheduling for laparoscopic splenectomy

(Rabon aff., ex. B at 9). On November 20, 2009, consults were initiated for urology, cystoscopy, and surgical clinic for reevaluation and scheduling of laparoscopic splenectomy.

On November 24, 2009 (ENC: 92), a urology evaluation was scheduled for the plaintiff on December 31, 2009, and the surgical clinic follow-up was held until the urology evaluation could be completed.

On December 31, 2009 (ENC: 96), the plaintiff was seen in the urology clinic with a history of urinary frequency and passing small clots, no dysuria. At that time a urine sample was taken for cytology analysis with a planned follow-up with the urology clinic to be scheduled.

On July 3, 2010 (ENC: 110), the plaintiff reported to sick call complaining of having been diagnosed with a splenic cyst and continuing to have lots of pain in his left abdomen. The plaintiff's medical records regarding Encounter 110 reflect that he was "wondering when he is going to be seen by the doctor again or will have the surgery that he thought he was supposed to have?" At that time, the plaintiff was informed that his inquiry would be referred to the SCDC medical staff for review by a physician regarding the need for follow-up with a physician and/or the need for follow-up in the surgery clinic.

On September 1, 2010 (ENC: 116), the plaintiff reported to the Doctor's Clinic complaining of abdominal pain and ingrown toenails. At that time, the plan was to initiate a consult for urology clinic that had already been approved but had previously been cancelled twice. It was also noted that a urinalysis should be conducted just prior to the appointment and that the plaintiff's CT results, urine cytology results, and urinalysis results should be sent to the urology clinic for the appointment.

On September 23, 2010 (ENC: 117), the plaintiff's medical records indicate that he was seen in the urology clinic at Kirkland Correctional Institution ("KCI") and received a recommendation for a referral back to the surgery clinic. The plaintiff also

received prescriptions for Bactrim and Ditropan for nocturia and was advised to follow up with the urology clinic as needed.

On September 27, 2010 (ENC: 118), the plaintiff reported to sick call for follow-up regarding a note to staff requesting status of his surgical clinic follow-up. The plaintiff's medical records indicate that he was informed by defendant Nurse Administrator Yvonne McDonald that any further surgical consult must be approved by defendant SCDC Medical Director Moore prior to scheduling.

On November 9, 2010 (ENC: 124), the plaintiff reported to sick call complaining of having pain in his left side. He further stated that he thought the pain "might be related to his spleen." He further complained of having blood in his urine. At this time, the plaintiff was evaluated and found to not be in acute distress. Accordingly, the plaintiff was informed that his need for follow-up with an SCDC physician would be reviewed by the SCDC medical staff. At this time, another consult to surgery clinic was initiated.

On November 15, 2010 (ENC: 125), the plaintiff was seen in the Doctor's Clinic requesting cystic spleen treatment and stating that he still has abdominal pain and blood in his urine. It was noted that the plaintiff had been seen in the urology clinic on January 7, 2010, and September 23, 2010; that a CT scan indicated a large splenic cyst; that his urine cytology was negative for malignancy, and that a consult for the surgery clinic had been initiated. The plaintiff was notified of the pending approval request for a surgery clinic follow-up by M-147 form.

On November 18, 2010 (ENC: 127), the plaintiff was seen in the Doctor's Clinic continuing to complain of pain in left upper quadrant of the abdominal area radiating down to the left thigh. The plaintiff stated that he was "still concerned about the splenic cyst and what treatment was needed." At this time, the plaintiff was prescribed 800 milligrams of Ibuprofen for pain.

On December 3, 2010 (ENC: 130), the plaintiff reported to sick call complaining of "having a spastic bladder and stating he is urinating blood." The plaintiff was evaluated and found not to be in acute stress. He was informed that the encounter would be deferred to the MD screen for review by an SCDC physician regarding the need for follow-up.

On December 30, 2010 (ENC: 134), the plaintiff reported to sick call inquiring as to the status of further surgical treatment of his splenic cyst condition. At that time, the plaintiff was evaluated and found to be in no acute distress. The plaintiff was informed that he had an appointment with the surgical clinic, but could not be told when due to security concerns.

On January 20, 2011 (ENC: 135), the plaintiff was seen at the KCI surgery clinic by Dr. Moss. Upon evaluation, Dr. Moss recommended CT guided aspirates.

Also on January 20, 2011 (ENC: 136), the plaintiff reported to sick call inquiring about his future CT scans of his splenic cyst condition. The plaintiff was evaluated at that time and found to be in no acute distress. The plaintiff was informed that he would have future appointments with the surgery clinic regarding CT scans of his spleen.

The plaintiff was scheduled to have the aspiration procedure on February 24, 2011, and Imagecare was contacted and requested to send the plaintiff's test images to Tuomey Hospital for physician review in connection with the aspiration procedure. On February 24, 2011, the plaintiff was transported to Tuomey Hospital for the aspiration procedure. However, the procedure could not proceed as scheduled because Imagecare had not sent the diagnostic images as requested. As a result, the aspiration procedure had to be rescheduled and was rescheduled for March 7, 2011.

On March 7, 2011 (ENC: 148), the plaintiff was transported to Tuomey Hospital and underwent an aspiration procedure to the large splenic cyst.

On March 23, 2011 (ENC: 151), the plaintiff reported to the LCI medical department requesting pain medication and inquiring regarding the test results of the fluid aspirated from the splenic cyst. He was prescribed 800mg of Motrin for 30 days and advised that he would be informed of test results upon receipt by the LCI medical department.

On March 31, 2011 (ENCs: 155, 156 & 157), LCI medical department received the body fluid culture test results from Tuomey Hospital and said report was reviewed by Nurse Practitioner Rabon. The test results indicated no growth and no abnormality. Based upon the test results, it was determined that no further treatment of the splenic cyst was recommended. Following said determination, Nurse Administrator Yvonne McDonald responded to the plaintiff's note to staff and advised him that the test results were received and indicated no further treatment was recommended. The plaintiff was further advised to use the sick call system procedures to report any additional concerns.

On June 29, 2011 (ENC: 159), the plaintiff reported to the LCI medical department complaining of abdominal and back pain. He stated his history of a splenic cyst condition and requested a prescription for Ibuprofen 800 mg. He was evaluated at this time and found to be in no acute distress. He was advised that the encounter would be placed on the MD screen for review by an SCDC physician for evaluation of any need for follow-up care. The plaintiff was also prescribed IBU 800mg as needed for pain - 45 pills per month for 90 days.

The plaintiff submitted an affidavit in support of his opposition to the motion for summary judgment. He states in that affidavit that he was told in November 2009 that he needed to have his spleen removed, and Dr. Stanford recommended a urology evaluation, cystoscopy, and a follow-up for reevaluation and scheduling for laparoscopic splenectomy. The plaintiff went to the urology clinic on December 31, 2009. After that, seven months passed, and the plaintiff did not hear anything about the recommended

treatment.  The plaintiff notes that he went to sick call to see defendant Pratt, a Licensed Practical Nurse at LCI, to complain, but Pratt told the plaintiff that there was no mention of treatment being scheduled.  He claims he was told that defendants Rabon and McDonald were responsible for his treatment and that his encounters were deferred to them.  He claims his condition worsened, and he continued to have severe pain and difficulty urinating and eating.  He filed both a step one and step two grievance, and both were denied.  In September 2010, he complained to defendant Rabon that he was supposed to have surgery and that he was in pain.  Defendant Rabon told the plaintiff that he was not going to have surgery, that he had to see a urologist for his condition, and that the pain was in his head.  The plaintiff states in is affidavit that he complained to defendant McDonald in September 2010, and she informed the plaintiff that defendant Dr. Moore was responsible.  According to the plaintiff, on November 15, 2010, defendant Rabon informed him that the SCDC was not going to pay for his surgery and that the pain was in his head.  At that time, she initiated the surgery consult and "finally prescribed pain medication after a year had passed" (Pl. aff. ¶¶ 2-12).

The plaintiff notes that on December 3, 2010, South Carolina Administrative Law Judge Shirley C. Robinson issued an order dismissing his appeal of the denial of his step two grievance in which he complained that he was not being provided proper treatment for the splenic cyst.  While Judge Robinson found that dismissal was appropriate because the appeal did not come within the court's appellate jurisdiction, she noted in her decision that "it appears the Inmate has not received appropriate medical treatment."  Further, she ordered that the SCDC "promptly arrange for the Appellant to be seen by a surgeon for treatment for his splenic cyst" (pl. resp. m.s.j., ex. 1; pl. aff. ¶ 13).

The plaintiff notes that he underwent a procedure to aspirate the cyst in March 2011, over a year after surgery was initially recommended.  He states the surgeon told him that he would have to see him again after the procedure; however, the plaintiff did not see

9

the surgeon again until October. The plaintiff claims that he continues to suffer pain and urination problems (pl. aff. ¶¶ 16-17).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the the the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### *Deliberate Indifference to Serious Medical Needs*

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier v. Beorn*, 896 F.2d 848, 851-52 (4th Cir. 1990) (citation omitted). "It is only such indifference

11

that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment. *Id.* Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

The evidence before the court reveals that in late November 2009, Dr. Stanford recommended that a cystoscopy, urology evaluation, and laboratory tests be performed on the plaintiff and that the plaintiff be reevaluated and scheduled for a laparoscopic splenectomy. Lab tests were performed on November 30, 2009, and he was seen in the urology clinic on December 31, 2009. Seven months later, in July 2010, when no surgery had been scheduled, the plaintiff complained to defendant Pratt that his pain continued, and he wanted to know when he would be seen by a doctor or when his surgery would be scheduled (*see* Rabon aff., ex. A, ENC: 110). In September 2010, the plaintiff continued to complain of abdominal pain and nausea related to the cyst in his spleen. On September 23, 2010, the KCI urology clinic recommended referral to the surgery clinic. The plaintiff complained to defendant McDonald on September 27, 2010, that he wanted to go to the surgical clinic. Defendant McDonald then told the plaintiff that the surgical consult had to be approved in Columbia before it could be scheduled. The plaintiff complained of splenic pain and blood in his urine again on November 10 and 15, 2010. The surgical consult was initiated on November 15, 2010. His complaints continued through November and December 2010 and January 2011, and the cyst was finally aspirated on March 7, 2011.

Clearly, the plaintiff's medical need was objectively serious. Further, viewing the evidence in a light most favorable to the plaintiff, issues of material fact remain on the issue of whether the defendants responsible for the treatment of the plaintiff were deliberately indifferent to that need. *See Miltier*, 896 F.2d at 851-52. Over a year went by

between the recommendation of scheduling of a laparascopic splenectomy in November 2009 and the aspiration of the cyst in March 2011. "Under the applicable legal principles, a significant delay in the treatment of a serious medical condition may, in the proper circumstances, indicate an Eighth Amendment violation." *Webb v. Hamidullah*, No. 06-7381, 2008 WL 2337608, at *6 (4th Cir. 2008) (citing *Estelle*, 429 U.S. at 104-05 (holding that deliberate indifference may be demonstrated by "intentionally denying or delaying access to medical care")). Further, the medical record shows the plaintiff frequently complained of pain and nausea, evidencing that the delay in treatment of the splenic cyst caused him substantial harm. *See id.* at *7 (noting that plaintiff must show that delay caused him severe harm in order to defeat summary judgment). Based upon the foregoing, this court recommends that the summary judgment motion be denied on this claim.

### *Personal Allegations and Supervisory Liability*

The defendants argue that the plaintiff's complaint and amended complaints do not set forth any specific factual allegations against defendants Moore, Padula, Ozmint, Lewis, Bowman, McCoy, Chambers, and Dingle. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("Having failed to allege any personal connection between [the defendant] and any denial of [the plaintiff's] constitutional rights, the action against him must fail.").

As argued by the defendants, the plaintiff's claims against defendants Ozmint, the Director of the SCDC, and Padula, the Warden of LCI, appear to be based on their status as supervisory officials. To the extent the plaintiff seeks to hold these defendants liable in their supervisory capacity, the doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977). To establish a claim for denial of medical care against non-medical supervisory defendants, the plaintiff must show that they failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison

13

physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (citations omitted). The plaintiff has failed to make such a showing here. As in *Miltier*, there is no evidence in the instant case to even suggest that these defendants authorized any subordinates to provide inadequate medical care or to delay to provide specific medical treatment to the plaintiff. Based upon the foregoing, the claims against defendants Ozmint and Padula fail.

The defendants also argue that the claim against defendant Dr. Moore, the Director of Medical Services for SCDC, is based upon his supervisory capacity. However, the plaintiff has made personal allegations against Dr. Moore alleging that Dr. Moore was personally responsible for delaying treatment of the splenic cyst (*see* amended comp., doc. 79 at p. 19; *see also* pl. resp. m.s.j. 6-9). For instance, the plaintiff cites several Encounters in the medical records, including Encounters 118 and 139, which indicate that the plaintiff's appointment in the surgery clinic was delayed pending approval by Dr. Moore (see Rabon aff., ex. A). Accordingly, this court finds that the issue of material fact remains as to whether Dr. Moore acted personally in the alleged deprivation of his constitutional rights.

The defendants further argue that the plaintiff has failed to set forth specific factual allegations against defendants Lewis, Bowman, McCoy, Chambers, and Dingle[2]. This court disagrees. The plaintiff alleges that defendant Dr. Lewis, a physician at LCI, "directly participated in the denial and delay of the recommended necessary treatment" when he initiated the scheduling of lab work and other consults recommended by Dr. Stanford but failed to follow up to ensure that treatment was scheduled and completed appropriately (pl. resp. m.s.j. 10; Rabon aff., ex. A, ENCs 90, 92, 96). The plaintiff alleges that defendant Bowman, a Medical Assistant Tech, failed to schedule follow-up on the

---

[2] The defendants do not argue that the plaintiff has failed to set forth specific factual allegations as to defendants Nurse Administrator McDonald, Nurse Practitioner Rabon, Nurse Pratt, and Dr. Benoir.

14

recommended treatment for the splenic cyst (pl. resp. m.s.j. 9; Rabon aff., ex. A, ENCs 90, 92). He alleges that defendant McCoy, a Medical Assistant Tech, delayed his urology evaluation when she scheduled the appointments on three occasions but failed to ensure the appointments were met or rescheduled (pl. resp. m.s.j. 9-10; Rabon aff., ex. A, ENCs 101, 102, 106, 109, 110). The plaintiff further alleges that defendant Chambers denied and delayed his urology evaluation and failed to ensure that the appointment was rescheduled, which delayed the recommended treatment (pl. resp. m.s.j. 10; Rabon aff., ex. A, ENCs 92, 108, 110). Lastly, the plaintiff alleges that defendant Dingle, an Administrative Assistant, had responsibility over medical records and ensuring that scheduled appointments were carried out, and her actions and inaction delayed his treatment (pl. resp. m.s.j. 10; Rabon aff., ex. A, ENCs 92, 101, 102, 106, 109, 110, 143, 145, 146). Based upon the foregoing, this court finds that the plaintiff has set forth sufficient specific factual allegations against the foregoing medical staff defendants.

***Grievances***

To the extent the plaintiff alleges that his constitutional rights were violated because defendants Ozmint and Padula failed to respond to his written staff requests and/or grievances to his satisfaction, such claim should be dismissed. "The Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Even assuming that the defendants violated their own grievance procedures, such actions do not state a claim which is actionable under Section 1983. *See Brown v. Dodson*, 863 F.Supp. 284, 285 (W.D. Va.1994).

***Eleventh Amendment Immunity***

To the extent the defendants are sued in their official capacities, they correctly assert that they are immune from suit in this court. As arms of the state, they are entitled to sovereign immunity and are not "persons" under Section 1983. *Will v. Michigan Dep't of State*

*Police*, 491 U.S. 58, 70-71 (1989). Although a State may waive sovereign immunity, *Lapides v. Board of Regents*, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. *See* S.C. Code Ann. § 15-78-20(e).

***Qualified Immunity***

The defendants further argue they are entitled to qualified immunity as their conduct did not violate any clearly established constitutional or statutory rights of which a reasonable person should have known. This court disagrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it. *Id.* In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

Here, as discussed above, viewing the evidence in a light most favorable to the plaintiff for purposes of summary judgment, the facts alleged show that the actions and inactions of the medical staff defendants constituted deliberate indifference to the plaintiff's serious medical needs. The Eighth Amendment right at issue was clearly established at the time of the events alleged in the complaint. Accordingly, the medical staff defendants are not entitled to qualified immunity.

16

**CONCLUSION AND RECOMMENDATION**

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' motion for summary judgment (doc. 98) be granted as to the claims against defendants Ozmint and Padula and against the remaining defendants in their official capacities, and denied as to the plaintiff's deliberate indifference claims against the remaining defendants in their individual capacities.

s/ Kevin F. McDonald
United States Magistrate Judge

January 23, 2012
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).