IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Frenchis Gerald Abraham, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Yvonne McDonald, RN, et al., )<br>)<br>Defendants )<br>)<br>_____) | Civil Action No. 6:11-46-RMG<br><br><br><br>**ORDER** |

This matter comes before the Court on Defendants' motion for summary judgment. (Dkt. No. 98). Plaintiff, a *pro se* state prisoner, seeks relief pursuant to 42 U.S.C. § 1983 for alleged violations of his rights under the Eighth Amendment of the United States Constitution to be free of cruel and unusual punishment. Plaintiff alleges that the failure of the Defendants, all officials with the South Carolina Department of Corrections ("SCDC"), to provide him medical treatment "in a prompt manner" constituted a violation of his Eighth Amendment rights. (Dkt. No. 79 at 2).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(b), D.S.C., this matter was referred to the Magistrate Judge for pretrial handling. The Magistrate Judge issued a Report and Recommendation on January 23, 2012, recommending that the motion for summary judgment of Defendants Ozmint and Padula be granted, the motion for summary judgment of all other Defendants regarding claims against them in their official capacities be granted, and the motion for summary judgment of the Defendants (except Ozmint and Padula) regarding claims for alleged cruel and unusual punishment be denied. (Dkt. No. 116). Defendants filed objections

to the Magistrate Judge's Report and Recommendation. (Dkt. No. 120). After a careful review of the entire record in this matter, the memoranda of the parties and applicable case law, the Court grants Defendants' motion for summary judgment, as set forth further below.

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection has been made. The Court may accept, reject or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

In a motion for summary judgment, the movant is entitled to relief only if he or she can show "that there is no genuine dispute as to any material fact" and the moving party is thus "entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). A fact is deemed "material" if proof of its existence or non-existence would affect the disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of "material fact" is "genuine" if the evidence offered is of the type from which a reasonable jury might return a verdict for the non-moving party. *Id.* at 257. The evidence must be viewed in a light most favorable to the non-moving party, and all inferences and ambiguities are read in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The Eighth Amendment prohibits "cruel and unusual punishment", which has been held to protect incarcerated persons where they have been denied medical care in a manner which constitutes a "deliberate indifference to serious medical needs of prisoners" and results in

"unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Fourth Circuit has held that "negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference." *Webb v. Hamidullah*, 281 Fed. Appx. 159, 166 (4th Cir. 2008) (unpublished). Where the alleged Eighth Amendment violation involves a delay in medical or surgical treatment, a violation occurs only "if the delay results in some substantial harm to the patient." *Id.* "Substantial harm" can be demonstrated by the "marked" worsening of the inmate's condition during the delay in treatment, "frequent complaints of severe pain", or the progression of the condition during the period of delay so that it is now untreatable. *Id.* at 167.

The Fourth Circuit has provided considerable guidance in assessing claims of deliberate indifference involving a delay but not a denial of surgical treatment to prisoners. In *Price v. Carey*, 956 F.2d 1163 (4th Cir. 1992)(unpublished table decision), the Fourth Circuit rejected a claim of deliberate indifference where there was an eight month delay in providing surgery but no indication of a need for more emergent treatment. On the other hand, the Fourth Circuit recognized a deliberate indifference claim where there was a four year delay in providing surgical treatment, during which time the previously treatable condition became inoperable. *Garrett v. Elko*, 120 F.3d 261 (4th Cir. 1997)(unpublished table decision). Further, the Fourth Circuit rejected a deliberate indifference claim where, during a period of delay in conducting surgery, the prisoner had complaints of pain that resulted in prison medical officials evaluating and monitoring the patient and assessing the patient for any worsening of his condition. *Webb*, 281 Fed. Appx. at 167.

## Factual Background

Plaintiff was incarcerated at Lieber Correctional Institution, which is part of the SCDC. In early July 2009, Plaintiff presented to sick call complaining of a variety of symptoms, which included hematuria (blood in the urine) and gastrointestinal complaints. (Dkt. No. 98-3 at 17-18). Various blood tests were conducted in August which suggested some possible liver abnormalities. *Id.* at 17. A physician, Dr. Pate, evaluated Plaintiff with complaints of abdominal pain and diarrhea on October 12, 2009, and ordered a variety of laboratory and radiographic studies. *Id.* at 16. Imaging studies, including a CT and ultrasound, were performed at a facility away from the prison on October 22, 2009. *Id.* at 15. Dr. Pate reviewed the reports from the CT and ultrasound on November 9, 2009, and noted that they revealed a "large splenic cyst measuring more than 9 cm" but that there was "no evidence of occult malignancy or inflammatory process." *Id.* Dr. Pate requested a "surgical consult ASAP." *Id.*

Plaintiff was seen by a surgeon, Dr. Stanford, on November 19, 2009, who evaluated the patient for both the hematuria and the splenic cyst. The physician noted that in regard to the cyst, the patient had some history of abdominal pain but the symptoms were mostly with reflux and diarrhea. (Dkt. 98-4 at 9). Dr. Stanford ordered a variety of diagnostic studies to evaluate both the splenic cyst and the hematuria and directed that the patient follow up with him once the tests were done to reevaluate the patient and schedule surgery for the cyst. *Id.* Plaintiff, however, was not rescheduled to see Dr. Stanford and there was no further follow up at that time to address the cyst. Instead, approvals were given for a urology consult to address the Plaintiff's hematuria. (Dkt. 98-3 at 13).

On July 3, 2010, more than eight months following the last contact with a physician

regarding the splenic cyst, Plaintiff presented to a nurse at sick call and inquired about when his splenic surgery was going to be scheduled. The nurse conducted a physical exam and documented that the patient had "tenderness" in the "upper left abdominal area" but was not in "acute distress." (Dkt. No. 98-3 at 11). The nurse advised Plaintiff that his request for follow up with a physician regarding his cyst would have to be reviewed by the doctor. *Id.* Two weeks later, on July 17, 2010, Plaintiff was seen at sick call for an ingrown toenail and athlete's foot, without any documented complaints regarding pain or other symptoms allegedly related to the splenic cyst. *Id.* On August 5, 2010, laboratory results relating to Plaintiff's hematuria evaluation indicated no evidence of malignancy. *Id.* at 10-11.

Beginning on September 1, 2010, Plaintiff repeatedly complained about the pace of his medical evaluation and treatment regarding both his hematuria and the splenic cyst. In a sick call encounter on September 1, Plaintiff asserted he was experiencing abdominal pain and the cyst was allegedly "causing his stomach to be pushed out and nauseated and can not eat." *Id.* at 10. A nurse examined Plaintiff and found normal vital signs and his abdomen soft and non-distended. *Id.* A urology consult had been approved for the hematuria and laboratory results were gathered and sent for that appointment. Plaintiff was seen by a urologist on September 23, 2010 and was prescribed multiple medications to treat the urinary complaints. *Id.* Plaintiff was instructed to follow up with urology as needed. *Id.* Plaintiff raised with the urologist the failure to follow up on the splenic cyst, and the physician informed him that this was outside his area of expertise. (Dkt. No. 113-3 at 1).

Upon Plaintiff's return to the prison following his urology appointment, he filed a grievance regarding the failure to treat his splenic cyst. He asked for treatment of the condition

and pain medication to deal with "the hardship and pain of this condition." *Id.* The SCDC's response to the grievance indicated that Dr. Moore, the South Carolina Department of Corrections Medical Director, would have to approve further surgical evaluation and treatment of the cyst. (Dkt. No. 113-3 at 1; 98-3 at 9-10). On October 10, 2010, Plaintiff presented to sick call complaining of abdominal pain and "thinks this pain might be related to his spleen." (Dkt. No. 93-3 at 8). A nurse examined Plaintiff and found no evidence of any acute distress. She did find the abdomen "tender in the left upper quadrant." *Id.* The nursing staff documented continuing efforts to obtain approval for Plaintiff to be seen by a surgeon. *Id.* On October 15, 2010, Plaintiff again appeared at sick call and inquired when he would see a surgeon. *Id.*

Plaintiff was again seen by a nurse on October 18, 2010, expressing concern about his splenic cyst and the need for treatment. He was examined, found to be in no acute distress, had normal breathing and vital signs and had a "slightly tender" abdomen. *Id.* at 7. The record documented that the request for surgical evaluation was then pending. Plaintiff also mentioned in that encounter certain mental health issues he was then experiencing unrelated to the cyst or hematuria, and he was seen that day as a follow up on the mental health issues. *Id.* at 7-8. Plaintiff was also seen at sick call on December 4, 2010, complaining of a recurrence of his urinary symptoms and was prescribed medication for this condition. *Id.* at 6.

Plaintiff continued his efforts to obtain surgical evaluation and treatment for his splenic cyst. After failing to obtain relief in the prison grievance process, Plaintiff filed an appeal to the Administrative Law Court. On December 3, 2010, Administrative Law Judge Shirley Robinson dismissed the appeal for lack of appellate jurisdiction, but found that "Inmate has not received appropriate medical treatment" and ordered that the SCDC "shall promptly arrange for

[Abraham] to be seen by a surgeon for treatment of his splenic cyst." (Dkt. No. 113-2). Shortly thereafter, Plaintiff's request for a surgical evaluation was approved and scheduled for January 20, 2011. (Dkt. No. 98-3 at 5).

Plaintiff was seen by a surgeon, Dr. Moss, on January 20, 2011 regarding the splenic cyst. Dr. Moss described Plaintiff's abdomen as "tender" in the left upper quadrant and ordered treatment by way of a CT guided aspiration of the cyst. (Dkt. No. 98-4 at 32). The procedure was initially ordered for February 24, 2011 at Tuomey Hospital in Sumter but was postponed after the patient arrived because the outside radiology group that had earlier performed the initial CT had failed to send the hospital those films. Several weeks later, on March 7, 2011, Plaintiff returned to Tuomey Hospital and the aspiration of the cyst was successfully accomplished without any documented complications. *Id.* at 36. A culture of the cystic fluid was essentially normal and no further treatment was recommended. (Dkt. No. 98-3 at 1). Plaintiff subsequently complained of some pain in the abdomen and was prescribed 800 mg of Ibuprofen. *Id.*

## Discussion

Plaintiff's medical records, which were produced primarily by SCDC medical and nursing staff, document a series of delays in providing treatment to the inmate for his splenic cyst that would arguably constitute medical malpractice. The initial error appears to have occurred when the SCDC failed to follow a surgeon's November 19, 2009 order that the patient be returned to him for surgical treatment following the completion of various pre-operative laboratory studies. (Dkt. No. 98-3 at 13). When Plaintiff brought this failure to follow up to SCDC's attention in a July 3, 2010 sick call, there was no documented institutional response. Multiple further sick call encounters and a grievance also failed to produce any meaningful

action by SCDC. *Id.* at 8-10. It appears to the Court that it was the order of Administrative Law Judge Shirley Robinson that a surgical evaluation be ordered "promptly" which finally resulted in the provision of the necessary surgical treatment of the inmate. (Dkt. No. 113-2).

It is well settled, however, that "negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference." *Webb,* 281 Fed. Appx. at 166. Where the Eighth Amendment claim involves a delay but not a denial of medical care, the plaintiff must show "some substantial harm." *Id.* This can be demonstrated by a "marked" worsening of the condition, "frequent complaints of severe pain" or the progression of the condition so that it is no longer treatable. *Id.* at 167.

Fortunately for Plaintiff and SCDC, the inmate did not suffer any "substantial harm" as a result of the delay in rendering him surgical treatment for his splenic cyst. There is no evidence that the condition became inoperable, such as documented in *Garrett v. Elko,* or that there was any "marked increase" in the size of the cyst. *Webb,* 281 Fed. Appx. at 167. Further, while Plaintiff episodically complained of abdominal pain, all physical examinations of the patient (and there were many performed by the SCDC nursing staff) failed to demonstrate any acute distress. There was certainly no episode of "severe pain" documented in the record, must less "frequent complaints" of severe pain that the Fourth Circuit has required to establish evidence of "substantial harm" necessary to state a claim for deliberate indifference. Moreover, it appears that Plaintiff was able to obtain appropriate and necessary relief through available state procedures, most particularly from the Administrative Law Court.[1]

---

[1] SCDC would be well served to immediately reassess its procedures for timely processing requests for specialist treatment for its inmates because the facts here suggest a deficiency may exist. A future inmate could well suffer "substantial harm" should his or her

## Conclusion

Having found that Plaintiff suffered no "substantial harm" as a result of the delay in rendering surgical treatment to him, the Court concludes that Plaintiff cannot establish an Eighth Amendment claim for deliberate indifference to serious medical needs. Therefore, the Court grants the Defendants' motion for summary judgment. (Dkt. No. 98).

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

February 25, 2012
Charleston, South Carolina

---

condition progress in the face of such a delay in treatment as experienced by Plaintiff here.